U.S. BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  PATRICIA CURRIE      *      CHAPTER 13 BANKRUPTCY
                                         *
                                         *      SECTION "A"
                                         *
           DEBTOR      *      CASE NO. 12-11820
                                           *
\* \* \* \* \* \* \* \* \* \* \* \* \* \*

FILED:_____      _____
                                                                           **DEPUTY CLERK**

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION**

      **NOW INTO COURT,** through undersigned counsel comes debtor, Patricia Currie, who respectfully desires that the Court reconsider its ruling on the Motion to Compromise filed in the above captioned case:

      Debtor filed for relief under Chapter 13 of the U.S. Bankruptcy Code on June 15, 2012.  Debtor's Chapter 13 Plan was confirmed and the plan is current.

      "The Bankruptcy Code and Rules do not provide for Motions for Reconsideration. A Motion for Reconsideration filed no later than fourteen (14) days after entry of an order, as this one, is treated as a Motion for New Trial pursuant to Fed. R. Civ. Proc. 59, which is made applicable to this proceeding by Fed. R. Bankr. P. 9023.  FRCP 59 provides that a court may grant a new trial "for any reason for which a rehearing has heretofore been granted in a suit in equity

in federal court." A court may: [O]pen the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."

In re Hall (NO. 14-12406 A Bankr.E.D.La., 2015)

"Insurance proceeds payable to the debtor would be considered property of the estate. Certain types of insurance, such as fire, life, collision, uninsured motorist, and casualty insurance proceeds are property of the estate assuming the debtor is a beneficiary of those proceeds. In such cases, the debtor has the legal right and interest to the proceeds once the proceeds are determined to be properly payable. The estate receives a direct pecuniary benefit from the proceeds — indeed, the value of the estate is enriched by the proceeds, because the proceeds are either added to an already fully formed estate (e.g., life insurance), or replaces the value of components of the estate (as the rights are fixed under the policy) that have been destroyed, injured, etc., so as to make the estate whole."

Landry v. Exxon Pipeline Co., 260 B.R. 769 (Bankr. M. D. La., 2001)

The following is Ms. Currie's personal response to the objection by Fairway Villas HOA (FVI) which was to be presented in court by undersigned counsel.

"Referencing FV1's Exhibit "C" of their objection, please see Exhibit "1", which shows payments made to FV1 as ordered by the court. I did everything possible on my part to set up the automatic draft from my bank but my

2

information from the bank was that I could not do it; that it had to be initiated by FV1 by my sending FV1 a voided check showing my account number and the routing number, which I did. I spoke directly to Phil Gagnon and he said that he had no idea how to set up the automatic draft and that he had never done so with any of the homeowners associations that he managed. Since I was using the automatic draft in the payment of my Beau Chene dues, I went to them and they affirmed that FV1 had to initiate the process after I sent them one of my voided checks. I suggested to Mr. Gagnon that he ask Beau Chene how to set up the process. Not only did FV1 not make "repeated requests" that I set it up, they made none. It is a blatant lie that I failed to set up the automatic draft due to negligence on my part. It would have been to my advantage to do so to avoid the problems of lost checks or checks not received alleged by FV1 or checks received late which enabled FV1 to justify charging late fees for monthly payments, which they did. I suspect that the judge ordered automatic draft for the purpose of preventing these problems. (I suspect that FV1 did not want automatic draft because they wanted to charge late fees.) Also, it would have prevented FV1 from fouling my bank account at Chase to the point of my having to close it and open a new one to unravel the mess made by FV1 holding checks for 5 to 6 months without cashing them. (See Exhibit "A" relating meeting with Chase Vice President to resolve this problem.) Still I got charged $35 for a returned check, but Mr. Gagnon did not make the $35 he wanted for a returned check. The bank told him to just put the check through again. When FV1 started

3

to foul my Metairie Bank account, I stopped sending checks and started sending money orders or cashier's checks, which are not so easy to lose or to collect $35 fees. I had notified my attorney of FV1 "inability" to set up the automatic draft and he advised that I just let it go and call him if there was a problem. I had to call or write for other more important issues with the bankruptcy and did not bother him with this problem which I decided to handle myself.

My monthly payments to FV1 and to the Trustee were made on the same day. A quick check of the record will prove that I have never missed a payment to the trustee or even been late, unless a holiday intervened. The same applies to Beau Chene.

In this same paragraph 5, FV1 states that I only paid dues until August 28, 2015, "leading to the accumulation of over $4,000 in unpaid monthly dues and assessments." In my Exhibit "B" my certified letter to FV1 readily explains my position regarding assessments by my attorney, Keith Couture in his letter to FV1. The certified letter also reiterates the responsibilities of FV1 in the maintenance of association property, specifically, the buckled sidewalk to my condominium, which is still not repaired, even after FV1 lost two law suits over it. It has not been properly repaired since notification in 2002.

As to the legality of assessments, FV1 habitually levies them yearly, exceeding 100% over and above unit owners' dues. Yet, FV1 levies them when they have no association officers due to lack of attendance at annual meetings, i.e., no quorum. This is decidedly against condominium law. And, it is the

4

reason the assessments are legally invalid. So are the dues, which are still based on the original percentage ownerships from 40 years ago, in spite of the fact that 5 of the 12 unit owners confiscated jointly owned land and built additions to their units on it without reallocating percentage ownerships on which dues are based. These now larger units cost more to maintain and more to insure. And, the owners have increased the value of their units. This is the crux of my dispute with FV1 and has been so for over 30 years. Legalization of the additions requires an amendment to the condominium declaration, which requires 100% approval of the members of the association. This has been successful in the condominium association adjoining ours, and I brought the president of that association to our meeting years ago to explain how it was done, to no avail. These 5 out of 12 did not want their dues and assessments to increase and it only took one of them to stop the amendment to the condominium declaration. He, the one that was drawn up and ready to file, is long gone as are most of the 5 that made additions to their condominiums. To state that I do not pay my dues is a "mis-statement". I have steadfastly resisted <u>overpaying</u> my dues. I should have been paying at the rate of 5.2% for the past thirty years; but, have been paying at the original rate of 6.7%. This amounts to thousands of dollars.

      FV1's condominium declaration has never been amended. Units have been bought and sold several times. The current manager knows the condominium law, (he has lived in Beau Chene almost as long as I have) and he

has openly stated that I am correct in my explanation of how the dues and assessments are to be determined.

I have but touched lightly on the legality of dues and assessments and cannot be expected to condense over 30 years of violations of condominium law on the part of FV1 into a few paragraphs; except to enlighten the court on the basis for the current problems in this particular case. And I suspect that it is puzzling to anyone as to why "I don't want to pay these dues and assessments," when I am current in the payment of Beau Chene dues and Trustee payments.

I disagree with FV1 in this paragraph. I have not failed to pay dues and have not in part forced FV1 to vote increased dues and assessments. Had FV1 amended the condominium declaration to reallocate dues and assessments based on new percentage ownerships caused by 5 out of 12 owners who confiscated property owned by all 12 and by building additions on that confiscated property, blocking their neighbors' views, causing increased maintenance costs and insurance costs, (to say nothing of increasing the value of those 5 units at the going rate of $X/sq. ft. for property in Beau Chene), I would not be at odds with them.

Regarding increased insurance costs, FV1 implies, ironically, that I am the cause because I sued the insurance company. Had they repaired the sidewalk in 2002, there would have been no lawsuit when I fell on it then. The same for the second fall in 2009. It is now 2016 and still the sidewalk is buckled and water pools up on it in heavy rainfall. They have again been notified by certified letter,

6

(see Exhibit "B"). The former president and owner of Unit #7 sued the insurance company for injury due to her falling in the ditch behind her condo, blaming FV1 for the accident. She cost FV1 some $11,000.

It would take many hours and pages of documentation to relate all of the many expenses, unnecessary, that I have "in part" had to pay to FV1 over the past 30 years. Hundreds of hours of my time and thousands of dollars of my money, I have spent trying to legalize the additions made by 5 of the 12 members of this association based of square footage of the individual units. Those 5, that made the additions, are long gone. Their condominiums have been bought and sold several times, I being the only one remaining from the beginning that knows the history of the association. The current owners tend to believe that the management of FV1 is correct, even though he has previously been fired from FV1 for mismanagement. However, once issues are brought out of the association regime into the light of the real world, justice usually reveals. That has been my experience."

As shown above, Debtor has paid her dues as ordered by this Court. The balance owed is the assessments which is not addressed in the plan and has not been brought to the court's attention by FV1. Although debtor has timely paid all plan payments and dues, she is unable to maintain certain assets of the estate, her vehicle and herself. She asks this Honorable Court to reconsider its decision and order that a portion of the proceeds be allotted to her for use as first

requested with paid invoices being provided to the Trustee within 30 days of payment.

      **THEREFORE**, Debtor prays that the Court will reconsider its ruling on the Motion to Compromise in the above captioned case and will vacate the previous order and render a new order consistent with this motion and memorandum that was filed.

      **RESPECTFULLY SUBMITTED,**

_/s/Keith Couture_____
**KEITH COUTURE (#22759)**
337 Highway 21, Suite D
Madisonville, LA 70447
985-792-7746 (OFFICE)
985-400-2232 (FAX)

8